DAVID M. FINLAYSON and others *vs.* ABRAM CROOKS, impleaded, etc.

July 30, 1891.

On motion for reargument, August 27, 1891.

**Mechanic's Lien—Action to Enforce—Parties— Mortgagees.**— An action to enforce a mechanic's lien under Laws 1889, *c.* 200, is not a special statutory proceeding, but an ordinary civil action, proceeding according to the usual course of the law, and governed by the same rules of procedure as other similar actions, except as otherwise expressly provided in the statute itself.  A mortgagee or any other party claiming an interest in the premises may be made a party, and his rights adjudicated, whenever it might be done in an action to foreclose a mortgage.

**Same—Mortgage Intervening between Liens—Distribution of Proceeds of Sale—Priorities.**—When a mortgage lien intervenes, which is. subsequent to some of the liens under the  statute, but prior to others, the proper method of distributing the proceeds of the sale of the premises is to first set aside as applicable to the payment of statutory liens a sum equal to the amount of the liens prior to the mortgage, next. out of the remainder pay the mortgage, and then apply what is left, if anything, together with what was first set aside for that purpose, ratably among all the lien-claimants, without any  priority among themselves. (Modified on motion for reargument.  See p. 79, *infra*.  REP.)

**Same—Mortgage for Future Advances.**—In case of a mortgage to secure future advances,  the mortgagee cannot, as  against a subsequent lien-claimant, claim the benefit of the  security for optional advances made after actual notice of such lien.

Action to enforce a mechanic's lien for $480.75, brought in the district court for Ramsey county against Hans E. Larson and August. Christianson, owners of the land;  Louis L. Bondelli, a former owner, who conveyed to Larson and Christianson on February 13, 1890, in

pursuance of an agreement made prior to December 6, 1889; Julius Bjornstad and Peter Omdahl, partners as Bjornstad & Omdahl, and others, claiming mechanics' liens; the defendant Crooks, as holder of a mortgage for $3,000, made February 5, 1890, by Larson and Christianson, and against other mortgagees. The defendant Crooks appeals from an order refusing a new trial after a trial before *Kerr*, J., and judgment ordered subordinating the appellant's mortgage to the liens of plaintiff, of Bjornstadt & Omdahl, and of other lien-claimants, and directing a sale, etc.

*James H. Foote*, for appellant.

*William F. Carroll*, for plaintiffs, respondents.

*Williams & Schoonmaker*, for Bjornstadt & Omdahl, respondents.

MITCHELL, J. This action was brought to enforce a lien claimed under Laws 1889, c. 200. Other lien-claimants, the owner of the premises, and several mortgagees, including appellant, Crooks, whose mortgages were alleged to be subsequent to the plaintiff's lien, were made parties defendant. The appellant, by motion to dismiss the action as to him, and by objection to the admission of any evidence affecting his rights, made the point that the court had no jurisdiction to adjudicate his rights, his contention then and now being that, in an action to enforce a mechanic's lien, only the rights of those claiming liens under the statute can be adjudicated, and only such lien-claimants can be made parties defendant.

If such is the correct construction of the statute, it certainly furnishes a very inadequate and incomplete remedy; for, without an adjudication of the rights of incumbrancers and others claiming to have acquired an interest in the premises, lien-claimants would never know to a certainty what interest in the property was subject to their liens, nor purchasers at the sale what they were buying. Any such method of procedure as that contended for would be contrary to a fundamental principle and policy in all equity proceedings, to do complete justice by deciding upon and settling at once the rights of all persons included in the subject of the suit, for "a court of equity, in all cases, delights to do complete justice, and not by halves." The chief fallacy of appellant consists in assuming that an action to enforce a mechanic's lien is a special statutory proceeding, in which

the express provisions of the statute are at once the source, and a definition of the extent, of the powers and jurisdiction of the court. But there is nothing in the statute requiring or even looking to any such construction. While it is true that most of its provisions have reference to lien-claimants, as that is the subject of which it specially treats, yet it does not assume to prescribe any special code of practice or procedure, but leaves all such matters to be regulated by the general rules governing other actions of a similar nature. It expressly provides (§ 10) that a lien given by its provisions may be enforced "in the same manner as in actions for the foreclosure of mortgages upon real estate, except as otherwise herein provided." Now, it is a very familiar rule that in foreclosure actions every person who has acquired any interest in the property subsequent to the lien of the mortgage is a proper party. In one sense they are necessary parties, because, in order to make a foreclosure complete, to transfer a perfect title by the sale, it is necessary that the holder of every such interest should be brought before the court. There is nothing in the subsequent provisions of the act either prohibiting or inconsistent with a similar practice in suits to enforce liens. On the contrary, section 10 not only clearly contemplates, but in terms provides for, bringing in as parties "other persons" besides "lien-claimants." The argument, that because the statute expressly provides that all lien-claimants under the act shall be made parties, therefore no other persons can be, proceeds upon the same erroneous theory as to the nature of the action already referred to. Moreover, it proves altogether too much, for there is no express provision for making even the owner of the premises a party.

While undoubtedly the lien itself is purely the creature of the statute, yet an action to enforce it is an ordinary civil action, proceeding according to the usual course of the law, and governed by the same rules of practice and procedure as any other similar action, except as expressly modified by the statute itself. Consequently, a mortgagee, or any other person claiming an interest in the premises, may be joined as a party, and his rights adjudicated, whenever it might be done in an action to foreclose a mortgage. The cases cited by appellant are not at all in point, as they arose under statutes providing

for a special statutory proceeding *in rem*, or for an action strictly at law against the debtor owner, the judgment in which was enforceable by *scire facias* or an ordinary execution.

2. In the present case each of the liens under the statute arose under a separate and independent contract by the claimant directly with the owners of the property, some of them attaching before and some after the date of the lien of appellant's mortgage. The court divided them into two classes, viz., those which attached before the lien of the mortgage and those which attached subsequently, and directed that out of the proceeds of the sale of the premises the first class should be first paid in full, then the mortgage, then the second class of liens, if enough remained. This mode of distribution seems to have been adopted upon the theory that the two classes of liens attached to different interests, to wit, the first class upon the unincumbered property, and the second class upon the property subject to the mortgage. This method of distribution is not without authority under similar statutes. See *Crowell* v. *Gilmore*, 18 Cal. 370. But it seems to us to be based upon unsound reasoning, and in direct conflict with the express provision of the statute that the proceeds of sale should be distributed among all the lien-claimants ratably, and without priority among themselves. In cases where, as in this case, a mortgage lien has intervened, we think the proper method is to first set aside, as applicable to the payment of liens under the statute, an amount of the proceeds of sale equal to the amount of the liens prior to the mortgage; then next, out of the remainder, if sufficient for that purpose, pay the mortgage in full, and then apply whatever is left, if anything, together with what was first set aside for that purpose, ratably among all the lien-claimants in proportion to the amount due each, whether their liens attached prior or subsequently to the mortgage. This method fully protects the legal rights of the mortgagee, and at the same time complies with the provision of the statute that all lien-claimants shall be paid without priority among themselves.

But appellant cannot complain of the error of the court in this regard, for, if he is not entitled to the money, it is no concern of his

how it is distributed. He contends, however, that his mortgage, at least to the extent of $1,250, is entitled to priority over all the liens under the statute, because the money paid by him to the mortgagors was advanced, to that amount, to pay the purchase-money of the premises to the former owner, to defendant Bondelli. If Bondelli's claim for purchase-money had been entitled to a priority over the liens of those who performed labor and furnished material for the construction of the building, appellant's contention would have had at least strong equities to support it. But, under the facts found by the court, Bondelli had subjected his interest in the premises to all such liens, he having provided in his executory contract of sale to Larson and Christianson for the erection of the building by them. Of course, appellant can stand in no better position than Bondelli did.

Appellant's mortgage, recorded February 13, 1890, purported upon its face to secure a present indebtedness for the full sum of $3,000; but as a matter of fact no such amount was advanced at the time, the agreement being that it should stand as security for the amount paid in hand and for future advances, as follows: $1,250 cash down, $200 when the building, then in process of erection, was ready for plastering, and the remainder of the $3,000 when the building (which was to cost $4,000) was entirely completed, and all bills and lien-claims incurred in its erection fully paid. Down to March 5th there had been advanced by the appellant to the mortgagors the sum of $1,544.33. The lien of defendants Bjornstadt & Omdahl, for material, attached March 5th. Notwithstanding the fact that the building was never completed, nor the bills incurred in its construction paid, the appellant advanced to the mortgagors, between March 5 and July 19, 1890, the further sum of $308.75. Appellant, through his agents, had during this time "*actual notice and knowledge* of the construction of the building as it progressed, and of the work and labor done and materials furnished therefor." While the court finds that a large amount of the money secured by the mortgage was in fact paid, as the work progressed on the building, to laborers and material-men for labor performed and material

furnished in its construction, yet it is nowhere found that any part of the $308.75, advanced subsequently to March 5th, was so applied or paid. The trial court held that the lien of Bjornstadt & Omdahl was junior to the lien of the mortgage to the extent and amount of $1,544.33, but prior to it to the extent of the remaining $308.75. This is also assigned as error. It is not necessary to consider any of the controverted questions of priority between a first mortgage, to secure future advances, and subsequent incumbrances. Two facts, in substance found by the trial court, are, under all the authorities, decisive of this case, viz.: *First*, that the advances made by appellant after March 5th were optional, and not obligatory; and, *second*, that they were made with actual notice of the lien of Bjornstadt & Omdahl. This being the case, the appellant cannot, as against them, claim the benefit of the security for the advances, at least in the absence of any facts creating such an equity as would take the case out of the general rule. *Hopkinson* v. *Ralt*, 9 H. L. Cas. 514.

Order affirmed.

---

The following opinion on a motion for reargument was filed August 27, 1891:

MITCHELL, J. Upon the motion for reargument counsel have principally addressed themselves to the question of the proper method of distributing the proceeds of sale where a mortgage lien has intervened between the liens of different claimants for labor or material; that is, the distribution of the amount set apart equal to the liens prior to the mortgage. This is a question in which the appellant has no interest, and hence, even if the opinion suggests an erroneous method of distribution, it would constitute no ground for reargument. The question was not really before the court. Neither was the question fully argued by counsel. Moreover, it is one which presents some serious practical difficulties, whether the method of distribution followed by the trial court or that suggested in the opinion be adopted. For these reasons, while denying the application

for a reargument, we shall consider the question still an open one, to be determined upon fuller argument and consideration, whenever it arises hereafter.

Motion denied.