JAMES E. GLASS *et al. vs.* OLAF A. FREEBURG *et al.*

Argued by appellants, and submitted on brief by respondents, June 21, 1892. Decided July 7, 1892.

**Priority of Liens over a Mortgage.**

Where a building is constructed under one entire contract between the owner and the original contractor, the liens of all subcontractors, who furnished material or performed labor for the building at any time during the process of construction, attach, by relation, as of the date of the commencement of the work, and are entitled to a preference over a mortgage on the premises, executed by the owner subsequent to that date.

Appeal by defendants, Charles K. Fulton, D. L. Libbey, and others, lien claimants, from the judgment of the District Court of Hennepin County, *Pond, J.,* in the above-entitled action entered October 26, 1891.

The defendant Olaf A. Freeburg was on May 17, 1890, the owner of a lot in Highland Park Addition in the city of Minneapolis, and on that day entered into an oral contract with Nels A. Freeburg to build thereon for him a block of brick flats and other improvements. The plaintiffs, James E. Glass and Daniel H. McEwen, soon thereafter contracted orally with Nels A. Freeburg to furnish, and did furnish and deliver upon the lot certain lumber and other materials worth $809.17, to be used, and which were used, in the construction

of the building. Other persons furnished materials for and did work upon the building. On August 1, 1890, and while the construction was going on, Olaf A. Freeburg mortgaged the property to the Pioneer Savings and Loan Association for $8,000. The mortgage was recorded August 8, 1890. Some of the materials were purchased, and some of the work done under contracts made by Nels A. Freeburg with Fulton & Libbey and others a considerable time after this mortgage was made and recorded. The material men and mechanics afterwards filed liens on the property. This action was brought to foreclose these liens. The Freeburgs and the mortgagee and all the lien claimants were made parties. The trial court held the lien of Fulton & Libbey to be junior and subject to the mortgage, and they appealed.

*Wilkinson & Traxler*, for appellants,

Appellants contend that upon the facts found, their lien should have been adjudged to be prior to the mortgage. This is the sole question in the case. The building was erected under one general and entire contract between the owner and the contractor, for the erection of the entire building, and presumably as one continuous process of construction.

When a mortgage is placed upon realty, pending the erection of a building, and the entire building is erected under one general and entire contract providing for the construction of the entire building, and liens accrue, and are allowed, for materials furnished to the contractor under his contract, some of the lien claimants having furnished before, and others after, the execution of the mortgage, all the liens allowed are entitled to priority over the mortgage.

*G. D. Emery*, for respondent Pioneer Savings & Loan Association.

The appellant does not correctly interpret the findings of the court, nor the facts as established thereby. It nowhere appears that Nels A. Freeburg contracted to furnish the materials for the building. On the contrary, Nels A. was to do the work, but was only the agent for Olaf A. so far as furnishing material was concerned, and as such agent had a general authority to contract in the name of his prin-

cipal, for the material necessary for the construction of the building.

These appellants, Fulton & Libbey, did not furnish any material prior to December 27, 1890. They had no contract prior to that time. The mortgage was recorded August 8, 1890.

MITCHELL, J. Counsel for the respondent building association claims that the correct construction of the findings of the trial court is that Nels A. Freeburg was merely the agent of Olaf A. Freeburg, and as such contracted in the name and behalf of his principal for material and labor for the construction of the buildings referred to. We do not concur with this view. We think the findings are clearly to the effect that Olaf, as owner of the premises, contracted with Nels for the erection by the latter of the buildings, and that the latter, as principal and in his own behalf, purchased and contracted for the material and labor for the construction of the same, and that when the court described him as the "agent" (as well as the contractor) of Olaf, "with authority and power to contract for labor and material for the construction of the buildings," it had reference merely to the legal principle upon which it is held that a contractor has authority to charge the land of the owner with debts for labor and material incurred by him in performing his contract. See *O'Neil* v. *St. Olaf's School*, 26 Minn. 329, (4 N. W. Rep. 47;) *Laird* v. *Moonan*, 32 Minn. 358, (20 N. W. Rep. 354;) *Meyer* v. *Berlandi*, 39 Minn. 442, (40 N. W. Rep. 513;) *Burdwell* v. *Mann*, 46 Minn. 285, (48 N. W. Rep. 1120.) According to the findings we have, then, this state of facts: The owner of land made one entire contract with another for the erection thereon by the latter of certain buildings; that in the performance of his contract the contractor purchased from plaintiffs, and the plaintiffs furnished to him, certain material for the construction of such buildings on May 17, 1890, so that it must be taken as a fact that the actual work of the construction of the buildings was commenced as early as that date; that subsequently, and while the work was in progress, the owner of the premises executed a mortgage thereon to the respondent building association; that after this mortgage had been executed and recorded, and while the work was still in progress, the appellant, the Fulton &

Libbey Company, furnished to the original contractor certain material for the construction of the buildings in question. So far as appears, and presumably, the erection of the buildings was one continuous job performed under the original contract between the owner and the original contractor. The original contractor never filed any claim for a lien, but the appellant, not having received its pay, seasonably filed its claim for a lien for the material thus furnished to the contractor.

The sole question on this appeal is whether the lien of the appellant is entitled to a preference over the mortgage of the building association. This question has never before been presented for our consideration. In *Finlayson* v. *Crooks*, 47 Minn. 74, (49 N. W. Rep. 398,) each of the liens arose under a separate and independent contract by the claimant directly with the owner of the property. Moreover, the question of priority between the mortgagee and the lien claimants was not raised. In *Hill* v. *Aldrich*, 48 Minn. 73, (50 N. W. Rep. 1020,) the rights of subcontractors were not involved, and it also appeared that the mortgage was executed and recorded before anything had been done towards the construction of the building. In *Haupt Lumber Co.* v. *Westman*, 49 Minn. 397, (52 N. W. Rep. 33,) the original contractor had not commenced performance of his contract when the mortgage was executed, but it was intimated that possibly a different result might have been reached had the work of the construction of the buildings been commenced before the execution of the mortgage. We have had occasion recently to refer to the fact that the mechanic's lien law fails to make any express provision with reference to cases where a mortgage or other incumbrance is placed on the premises after the work of construction has been actually commenced. But we have arrived at the conclusion that, even in the absence of any express provision on the subject, upon certain general equitable principles, and also as a necessary implication from certain provisions of the statute that are expressed, the appellants' lien is entitled to a preference over that of the mortgage. The lien of the original contractor for the entire building, if he had claimed one, would have been held to have attached at the date of the actual commencement of the work, or of the furnishing the first material, and

no subsequent sale or incumbrance of the land by the owner would have affected this right, and any party purchasing or taking an incumbrance on the property while the buildings were thus in process of erection would have done so subject to it. The contract for the erection of the buildings being an entirety, the contractor, notwithstanding the mortgage to the building association, had a right to go on and finish them, and to insist on the priority of his lien for his entire pay over the lien of the mortgage. A subcontractor comes in by reason of his direct contract relation to the contractor, and the right of lien of the former for his claim is *pro tanto*, in a certain sense, substitutionary to that of the latter, and by relation is deemed to have attached at the date when the lien of the original contractor attached. The whole work, being done in the performance of one entire contract with the owner, is to be deemed a unit, whether done directly by the contractor himself or by subcontractors, and all liens therefor, without regard to the time in the progress of the work when the labor was done or the material furnished, are co-ordinate, and all attach by relation as of the date of the commencement of the work. The authority of the contractor to charge the land for the purposes of the contract is coextensive with the necessities of the building, and continues until it is finished, and the commencement of the building is notice to all the world of the existence of the power. Every one dealing with the property has the means, by ocular examination, of ascertaining whether work has been commenced or materials furnished on the ground.

The fact that buildings are in process of erection on premises charges every one with notice of the rights of the parties doing the work. If a building is being erected under a contract with the owner, any one dealing with the property is bound to take notice of the fact that labor and material for the completion of the building will be required, and that those who perform or furnish it will, under the law, be entitled to a lien therefor; and if they see fit to take a mortgage under such circumstances they assume the risk of its being subordinated to all liens which may attach to the premises for labor or material for the completion of the building in accordance with the contract under which it is being erected.

This rule is almost necessarily implied from the provisions of section 10 of the statute regulating the enforcement of such liens as between the contractor and the subcontractors and as between the subcontractors themselves. The incongruities and confusion that would arise in attempting to carry out these provisions upon any other theory will be apparent on a moment's reflection, as, for example, where a lien is given to the contractor as well as to subcontractors, or where, after judgment, the contractor pays off the subcontractors and is subrogated to their rights.

Our conclusion is that appellants' lien is entitled to a preference over respondent's mortgage.

The cause is remanded, with directions to modify the judgment accordingly.

·(Opinion published 52 N. W. Rep. 900.)

