NORTHWEST WHOLESALE LUMBER, INC., Plaintiff,

v.

The CITADEL COMPANY, et al., Defendants,

Builders Finance, Inc., Appellant,

Darlis Gray, d/b/a Interiors and Walls by DAR, and Genz–Ryan Plumbing & Heating Company, Intervenor, Respondents.

No. C5–89–1866.

Court of Appeals of Minnesota.

June 12, 1990.

Peter J. McCall, Stapleton, Nolan & McCall, St. Paul, for plaintiff.

Gerald G. Workinger, Jr., Minneapolis, for appellant.

James A. Fridland, Minneapolis, for Darlis Gray, d/b/a Interiors and Walls by DAR.

Kevin P. Carroll, McMenomy, Hansen, Carroll & McCann, P.A., Rosemount, for Genz–Ryan Plumbing & Heating Co.

Considered and decided by FOLEY, P.J., HUSPENI and LESLIE *, JJ.

## OPINION

DAVID R. LESLIE, Judge.

In this appeal after remand, Builders Finance, Inc. challenges an amended judgment entered against it establishing three mechanics' liens against property it owned. It also challenges a judgment of attorney fees entered against it as a sanction for its post-judgment motions. As set out below, we affirm the amended judgment in part, reverse it in part, and remand. We also reverse the separate judgment awarding attorney fees and costs incurred in connection with Builders Finance's motions.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

## FACTS

The property involved in this dispute, Lot 7, was conveyed by warranty deed to The Citadel Company in February 1984. Citadel is a building and design firm. Appellant, Builders Finance, granted Citadel a mortgage on the property which was recorded on February 24, 1984.

Citadel contracted with Northwest Wholesale Lumber, Inc., David H. Nichols, Genz–Ryan Plumbing & Heating Company, and Darlis Gray d/b/a Interiors and Walls by DAR to furnish labor and materials in the improvement of the lot. Work on the property began sometime in February and was completed sometime after August 1984.

Citadel filed a petition for Chapter 7 bankruptcy relief on December 11, 1984. The bankruptcy trustee formally abandoned Lot 7 in February 1985. Northwest Wholesale Lumber was granted relief from the automatic stay to enforce its mechanics' lien on March 8, 1985. On March 20, 1985, the bankruptcy court granted Builders Finance relief from the stay to foreclose its mortgage. Northwest began this action in April 1985, naming the above parties as defendants. Citadel did not answer or appear in the action and was found to be in default.

Darlis Gray, one of the respondents on appeal, asserted her mechanics' lien as a cross claim in the answer she filed in April 1985. In March 1986, she was granted relief from the automatic stay to enforce her lien.

On June 11, 1985, Builders Finance foreclosed on the property and bought it. The redemption period expired in December 1985.

Genz–Ryan, the other respondent on appeal, intervened in the action, filing its answer in August 1985. It also asserted its mechanics' lien as a cross claim. Builders Finance raised the "defense" of the automatic stay for the first time on the first day of trial, claiming it stepped into Citadel's shoes when it bought the property. Genz–Ryan was granted ten days to seek relief for the stay in bankruptcy court. Relief was not sought.

Judgment was entered in February 1987, granting mechanics' liens to Northwest, Gray, and Genz–Ryan. On appeal, this court held that Northwest's lien was invalid because it filed its lien statement after the 120–day time period for perfecting a mechanic's lien. *Northwest Wholesale Lumber, Inc. v. Citadel Co.*, 415 N.W.2d 399, 402 (Minn.App.1987), *pet. for rev. denied* (Minn. Feb. 12, 1988). We then remanded for findings on whether Citadel was both an owner and a contractor for purposes of the exception to the prelien notice requirement. *Id.* at 405.

On remand, the trial court found that Citadel was both owner and contractor. It again established valid liens in favor of Northwest, Gray, and Genz–Ryan. This appeal followed.

## ISSUES

1. Are the mechanics' lien claims unenforceable as violations of the automatic stay in effect upon Citadel's petition in bankruptcy?

2. Did the trial court err by applying the exception to prelien notice provided by Minn.Stat. § 514.011, subd. 4a?

3. Did the trial court err in finding the actual and visible beginning of improvements to have predated the mortgage?

4. Did the trial court err in refusing to allow a witness' deposition to be read into the record?

5. Did the trial court err in calculating prejudgment interest at 18%?

6. Did the trial court err in awarding attorney fees and costs under Minn.Stat. § 514.14?

7. Did the trial court err in awarding attorney fees and costs under Minn.R. Civ.P. 11 and Minn.Stat. § 549.21 in connection with Builders Finance's post-judgment motions?

8. Did the trial court err in denying Builders Finance's motion to enter judgment in accordance with our previous decision?

## ANALYSIS

1. Builders Finance claims that Gray's and Genz–Ryan's lien claims are void because they were filed during the automatic stay in bankruptcy. Genz–Ryan argues alternatively that the claims were merely voidable and Builders Finance did not seek enforcement of the stay, that the claims were excepted from operation of the stay under 11 U.S.C. § 362(b)(3) (1982), and that Builders Finance does not have standing to assert the stay. Because we agree that Builders Finance does not have standing to assert the stay to avoid the mechanics' liens, we need not address whether the lien claims are void or voidable.

Because the trustee abandoned Lot 7, it was property of the debtor, Citadel, at the time this action was commenced. Federal bankruptcy law provides an automatic stay against any act to create, perfect, or enforce any lien against property of the debtor. 11 U.S.C. § 362(a)(5). Unless relief from the stay is granted, the stay continues until the case is closed or dismissed. 11 U.S.C. § 362(c)(2).

The stay does not operate against actions to perfect an interest in property when the trustee's rights and powers would be subject to the perfection under section 546(b). 11 U.S.C. § 362(b)(3). The trustee's rights are subject to generally applicable laws that permit post-petition perfection of a property interest created prior to bankruptcy to relate back to the date the interest was created. 11 U.S.C. § 546(b).

■ Genz–Ryan claims its action to enforce its lien is an act to perfect its interest in Lot 7 under Minnesota's mechanics' lien laws. We disagree. Filing a lien statement within the prescribed time period is the means of perfecting a mechanics' lien claim. Minn.Stat. § 514.08 (Supp.1983); *Sterling Electric Co. v. Kent*, 233 Minn. 31, 34, 45 N.W.2d 709, 711 (1951). Once a lienholder has filed the lien statement and served a copy of it on the property owner, the action to enforce the lien may be commenced. Minn.Stat. § 514.11 (1982). Thus, while filing a lien statement is an act to perfect a lien which is excepted from the automatic stay, *see Yobe Electric, Inc. v.*

*Graybar Electric Co. (In re Yobe Electric, Inc.)*, 728 F.2d 207, 208 (3d Cir.1984), an action to enforce or foreclose the lien is not excepted, *Victoria Grain Co. v. Janesville Elevator Construction, Inc. (In re Victoria Grain Co.)*, 45 B.R. 2, 6 (Bankr.D.Minn. 1984). *See Schiffer v. Arvada Steel Fabricating Co. (In re Cantrup)*, 38 B.R. 148, 150–51 (Bankr.D.Colo.1984) (filing lien statement is perfection excepted from stay while commencing action to foreclose lien violated stay). Thus, the exception provided by 11 U.S.C. § 362(b)(3) does not apply.

Standing to enforce the automatic stay in bankruptcy is based on the policy underlying the stay. Its purpose is two-fold: (1) to give the debtor a "breathing spell" from creditors, permitting the debtor to attempt to plan repayment or reorganization; and (2) "to prevent one creditor from rushing to enforce its lien to the detriment of the other creditors," permitting orderly liquidation in which all creditors are treated equally. *Ahlers v. Norwest Bank Worthington (In re Ahlers)*, 794 F.2d 388, 393–94 & nn. 3–4 (8th Cir.1986) (citations omitted), *rev'd on other grounds*, 485 U.S. 197, 108 S.Ct. 963, 99 L.Ed.2d 169 (1988). Thus, both bankrupt debtors and their creditors are protected by the stay. *See, e.g., James v. Washington Mutual Savings Bank (In re Brooks)*, 871 F.2d 89, 90 (9th Cir.1989) (no standing, party not a creditor or joint debtor); *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 999 (4th Cir.1986) (bankrupt debtor's co-defendants have no standing to enforce stay except in unusual circumstances), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); *Lynch v. Johns–Manville Sales Corp.*, 710 F.2d 1194, 1196–97 (6th Cir.1983) (legal or factual nexus to debtor insufficient to gain standing to enforce stay).

■ Because Northwest Wholesale Lumber had been granted relief from the stay to enforce its lien, the district court had jurisdiction over the action when it was commenced. Builders Finance was a creditor of Citadel as mortgagee. No other basis for its role as creditor is provided in the record. Genz–Ryan filed its lien claim

after Builders Finance foreclosed on the property. When asserting the automatic stay for the first time at trial, Builders Finance was asserting it as a property owner, not as Citadel's creditor. Although Builders Finance was Citadel's co-defendant in the action and had obtained its interest in the property as Citadel's mortgagee, these connections to a debtor in bankruptcy are insufficient to gain standing to enforce the stay.

Even though Gray asserted her lien claim before Builders Finance foreclosed the mortgage, the same reasoning applies. Moreover, the bankruptcy court granted her relief from the stay to *foreclose* her mechanics' lien, albeit after she had asserted it as a cross claim in her answer. We need not decide whether her claim was void or merely voidable at the time it was filed because the relief granted her allowed state court enforcement of her lien.

2. Having decided that Genz–Ryan and Gray are able to pursue their lien claims, we must decide whether their liens are valid.

Minn.Stat. § 514.011, subds. 1–2 (Supp.1983) requires contractors and subcontractors to provide owners with prelien notice, and notice is a prerequisite to creation of a valid lien. *Dolder v. Griffin*, 323 N.W.2d 773, 780 (Minn.1982). However, prelien notice is not required where:

> the contractor is managed or controlled by substantially the same persons who manage or control the owner of the improved real estate.

Minn.Stat. § 514.011, subd. 4a (1982). The exception is consistent with the purpose of prelien notice because it applies only when the owner is not unaware of liens arising from subcontractors or material suppliers. *Pelletier Corp. v. Chas. M. Freidheim Co.*, 383 N.W.2d 318, 321 (Minn.App.1986), *pet. for rev. denied* (Minn. May 16, 1986).

On remand, the trial court found that Citadel was both "owner" and "contractor" within the meaning of the exception. Builders Finance claims that an owner cannot also be a contractor. It argues that "contractor" is defined in section 514.011, subdivision 1 as a person who contracts with an owner. Because a person cannot contract with him or herself, Builders Finance argues, an owner cannot also be a contractor.

We decline this invitation to overrule our earlier decisions in *Pelletier Corp.*, 383 N.W.2d at 318, and *Simonson Cashway Co. v. Merickel Construction Co.*, 391 N.W.2d 903, 906 (Minn.App.1986). "Contractor" is not defined in the statute. Section 514.011, subd. 1 provides the specific notice required by a person who contracts with an owner and hires others during the improvement project. The subdivision is merely captioned "contractors." Builders Finance's argument is without merit.

3. Builders Finance next contends the trial court erred in finding the actual and visible beginning of the improvement commenced before February 24, 1985, the date its mortgage was recorded. The parties stipulated that Builders Finance did not inspect the property until after May 3, 1985.

Minn.Stat. § 514.05 (1982) provides that, as against a mortgagee without notice, no lien attaches prior to the actual and visible beginning of the improvement on the ground. Improvements are visible if

> the person performing the duty of examining the premises to ascertain whether an improvement has begun is able in the exercise of reasonable diligence to see it.

*Kloster–Madsen, Inc. v. Tafi's, Inc.*, 303 Minn. 59, 64, 226 N.W.2d 603, 607 (1975). Whether the beginning of improvement is visible or not is a question of fact. *Id.* Thus, we will not reverse the trial court's finding unless it is clearly erroneous. Minn.R.Civ.P. 52.01.

Nichols, who began the work on Lot 7, testified that he began the work before he finished working on Lot 6. He also testified that he sent an invoice to Citadel for Lot 6 work when it was completed. The invoice is dated February 23. Thus, he began work on Lot 7 before February 23. When explaining inconsistencies with his deposition testimony, Nichols testified that he began Lot 7 work about February 18.

Builders Finance contends that the *absence* of trees cannot be a visible beginning to the improvement. Builders Finance inspected the property more than two months after trees were cleared and digging had begun. Whether *evidence* of digging and tree clearing, including using a backhoe to excavate a tree buried an estimated seven feet underground, would be visible upon a reasonably diligent inspection of the property is a question of fact the trial court decided against Builders Finance. There is nothing in the record to suggest that its decision was clearly erroneous.

4. Builders Finance also contends the trial court denied it a fair trial by refusing to allow it to read into evidence portions of Nichols' deposition. Although a named defendant, Nichols was subpoenaed to be a witness at trial. Builders Finance did read portions of his deposition during its cross-examination of Nichols. Builders Finance then reserved the right to recall Nichols at a later time.

Instead of recalling him, Builders Finance attempted to read other portions of Nichols' deposition into the record. When specifically asked if it wished to recall Nichols to the stand, Builders Finance declined. The trial court refused to admit further portions of the deposition into evidence.

■ Builders Finance would have us read Minn.R.Civ.P. 32.01 to permit the use of Nichols' deposition without regard to Nichols' availability. However, Rule 32.-01(c) authorizes the use of a witness' deposition for any purpose, whether or not the witness is a party, if the court finds the witness unavailable, unless the unavailability was procured by the party offering the deposition. Nichols was a witness at trial and was available. The trial court did not err in refusing to admit portions of Nichols' deposition into evidence without his presence.

5. Builders Finance also claims the trial court erred by awarding Genz–Ryan and Gray prejudgment interest calculated at 18%. Genz–Ryan claims the 18% is proper under the terms of its agreement with Citadel. The parties do not dispute the award of prejudgment interest; they dispute the rate of interest to be used.

■ Under Minn.Stat. § 334.01 (1988), prejudgment interest is calculated at 6% unless a different amount is contracted for in writing.[1]

In addition, the mechanics' lien statutes provide:

(a) If the contribution is made under a contract with the owner and for an agreed price, *the lien as against him* shall be for the sum agreed upon.

(b) *In all other cases*, it shall be for the reasonable value of the work done, and of the skill, material, and machinery furnished.

Minn.Stat. § 514.03, subd. 1 (1982) (emphasis added).

Builders Finance does not challenge the trial court's finding that the reasonable value of the work performed is the agreed-upon price for the work. Even if the agreement between Genz–Ryan and Citadel included 18% interest on overdue payments, the lien is not being enforced against Citadel. The lien is enforceable against Builders Finance as owner of the encumbered property, not as a party to the construction contract. As to Citadel's agreement with Gray, no similar provision was alleged. Thus, section 514.03, subd. 1(a) does not apply to authorize calculation of 18% prejudgment interest on the amount Builders Finance owes to Genz–Ryan and to Gray. Accordingly, prejudgment interest must be calculated at the legal rate of 6%.

■ 6. Builders Finance also contends that the trial court abused its discretion in awarding attorney fees, costs, and disbursements to Genz–Ryan and Gray. Attorney fees, costs, and disbursements may be awarded to the prevailing party in an action to foreclose a mechanics' lien under Minn.Stat. § 514.14 (1988). In mak-

1. Minn.Stat. § 514.135 states that, unless provided by contract, the legal rate of interest specified in sections 334.01 and 549.09 shall be used. Because section 514.135 applies to contracts made on or after August 1, 1984, it does not apply in the present case.

ing the award, many factors should be considered, including the time and effort required, complexity of issues, value of the interest involved, and results secured at trial. *Jadwin v. Kasal*, 318 N.W.2d 844, 848 (Minn.1982). However, the amount of the award should be in reasonable relation to the amount of the judgment secured. *See Asp v. O'Brien*, 277 N.W.2d 382, 385 (Minn.1979).

An award of attorney fees has been reduced on appeal where the property owner successfully reduced the amount of the lien recovered, and the award was excessive compared to the lien amount. *See id.* at 385; *Bloomington Electric Co. v. Freeman's, Inc.*, 394 N.W.2d 605, 608 (Minn. App.1986), *pet. for rev. denied* (Minn. Dec. 17, 1986). Here, the amount of fees awarded *exceeds* the lien amount.

 Genz–Ryan secured a judgment of $4,612, including 18% interest, and was awarded $5,440 in attorney fees and costs. Gray secured a judgment of $287, including 18% interest, and was awarded $530 in attorney fees and costs. To bring the award into a reasonable relationship to the amount of judgment, Genz–Ryan's award is reduced to $2,720 and Gray's award is reduced to $300. Builders Finance raises other challenges to the reasonableness of the fees and costs requested. Its claims are not supported by the record.

██ 7. The trial court also awarded attorney fees in a separate judgment as a sanction against Builders Finance for its motion to clarify, vacate, and amend the amended judgment. While we encourage the proper application of Minn.R.Civ.P. 11 and Minn.Stat. § 549.21 (1988), we cannot affirm their use in this case. By its motion, Builders Finance not only sought to preserve certain issues for this appeal, but also requested the judgment to be amended as mandated by this court's earlier decision. The motions were not frivolous or groundless such that sanctions would be appropriate.

██ 8. Builders Finance's last claim is that the trial court erred by not following our previous decision finding Northwest Wholesale Lumber's mechanics' lien invalid for failure to file its lien statement within the 120–day filing period and reversing the judgment establishing Northwest's mechanics' lien. An appellate court decision on a given issue establishes the law of the case which must be followed on remand or on a later appeal. *McClelland v. McClelland*, 393 N.W.2d 224, 226 (Minn.App.1986) (citing *Lange v. Nelson–Ryan Flight Services, Inc.*, 263 Minn. 152, 155, 116 N.W.2d 266, 269 (1962), *cert. denied*, 371 U.S. 953, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963)), *pet. for rev. denied* (Minn. Nov. 17, 1986). The supreme court denied the petition to review our prior decision in this case. Our decision on the validity of Northwest's lien is the law of the case and must be followed.

## DECISION

The trial court did not err in finding Genz–Ryan and Gray to have enforceable mechanics' liens superior to Builders Finance's mortgage. Nor did the trial court err in refusing to allow Nichols' deposition to be read into the record. However, the trial court did err in calculating prejudgment interest, awarding attorney fees under Minn.Stat. § 514.14, and in refusing to follow the mandate of this court's prior decision. Accordingly, we affirm the amended judgment of July 20, 1989 as to the validity and priority of Genz–Ryan's and Gray's mechanics' liens and reverse as to the calculation of prejudgment interest, the attorney fees awarded, and the validity of Northwest Wholesale Lumber, Inc.'s mechanics' lien. On remand, prejudgment interest should be calculated at 6%, the award of attorney fees should be reduced as described above, and the judgment must be amended to find Northwest's mechanics' lien invalid for failure to file its lien statement within the 120–day period.

Finally, the trial court erred by imposing sanctions under Minn.R.Civ.P. 11 and Minn. Stat. § 549.21 in its separate judgment entered on October 16, 1989. As to that judgment, we reverse.

Affirmed in part, reversed in part, and remanded.